IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


JAMES A. DAVIS, *et al.*,

       Plaintiffs,

  vs.                           Civil Action 2:09-CV-015
                                      Judge Frost
                                      Magistrate Judge King

GOVERNOR TED STRICKLAND,
*et al.*,

       Defendants.


### REPORT AND RECOMMENDATION

This is a civil rights action in which plaintiffs, state inmates acting on their own behalf and on behalf of other Ohio inmates, allege that defendants[1] violated their civil rights while plaintiffs were incarcerated at Lebanon Correctional Institution ("LeCI"). Specifically, plaintiffs allege that they were subjected to cruel and unusual punishment and that their due process rights were violated. Plaintiffs also allege that defendants violated anti-trust laws and assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Plaintiffs further allege that inmates' visitation rights should be expanded.

This matter is before the Court on various motions of the parties addressing class certification and the sufficiency of the plaintiffs' claims.

---

[1]Plaintiffs have sued Governor Ted Strickland ("the Governor") and several individuals employed by the Ohio Department of Rehabilitation and Correction ("ODRC"): Terry Collins, Tim Brunsman, Robert Welch, James Kelly, Jason T. Hall, Clyde Gentry, James Dunn, April Barr, Greg Craft, Don Coble. For ease of reference, these ODRC employees will be referred to, collectively, as the "ODRC defendants."

## I. BACKGROUND

### A. ODRC Security Levels

ODRC maintains a policy that governs the placement and retention of inmates at various security levels throughout the ODRC system. Exhibit D, ¶ 2 (*"First Eleby Affidavit"*), attached to ODRC *Defendants' First Motion for Summary Judgment*, Doc. No. 28 (*"Motion for Summary Judgment"*). There are five security levels within the ODRC system, ranging from Level 1A, the lowest, to Level 5, which applies to violent or disruptive inmates who are deemed to pose a security threat. *Id.* at ¶ 5. LeCI is a Level 3 facility. *Id.* at ¶ 7.[2]

### B. Security Level Determines Inmate Placement

After review of an inmate's pre-commitment papers and consideration of other variables, an inmate is assigned a particular security level and is placed in an institution, consistent with that security level. *Id.* at ¶ 3. Each inmate also undergoes an annual security review during which the inmate's security level may be increased, be decreased or remain the same. *Id.* at ¶ 4.

In January 2009, plaintiffs were incarcerated at LeCI in the D-unit. Exhibit B, ¶ 4 *("Brunsman Affidavit")*, attached to the *Motion for Summary Judgment; Eleby Affidavit*, ¶ 6. The D-Unit is a privileged housing unit that offers additional privileges to its inmates. *Brunsman Affidavit*, ¶¶ 5-7. The cells in the D-unit contain bunk beds. *Id.* at ¶ 11. Recently, LeCI began to assign two inmates

---

[2]Level 3 replaces the classification previously known as "Close Security." *Eleby Affidavit*, ¶ 5. There are six Level 3 institutions within the ODRC system. *Id.* at ¶ 7.

to each D-unit cell. *Id.*[3]

On February 2, 2009, plaintiff Tyrone Reid underwent his annual security review. Exhibit A, ¶ 6 ("*Second Eleby Affidavit*"), attached to *DRC Defendants' Reply in Support of Their Motion for Summary Judgment*, Doc. No. 39 ("*ODRC Defendants' Reply*").[4] He was decreased to level two and was initially transferred to London Correctional Institution and later transferred to Marion Correctional Institution, where he currently resides. *Id. See also* Doc. Nos. 26, 29, 37.

On March 3, 2009, Plaintiff James Davis underwent his annual security review. *Second Eleby Affidavit*, ¶ 7.[5] On April 2, 2009, the Bureau of Classification approved a reduction to a level two security classification. *Id.* Plaintiff Davis was transferred to Marion Correctional Institution, where he currently resides. *Id. See also* Doc. No. 37.

Plaintiff Eugene Gall remains incarcerated at LeCI. Doc. No. 37.

### C. LeCI Inspection and Accreditation

The American Correctional Association ("ACA") "is the oldest and most prestigious correctional membership organization in the United States." Exhibit A ("*ACA Report*"), p. 5,[6] attached to the *Affidavit of Jason Hall* ("*Hall Affidavit*"), which is attached as Exhibit C to the

---

[3]Within the institution, LeCI assigns only two inmates to each cell. *Brunsman Affidavit*, ¶ 12.

[4]Plaintiff Reid's prior annual security reviews were held on February 6, 2008 and February 6, 2007. *Id.*

[5]Plaintiff Davis's prior annual security reviews were held on March 18, 2008 and March 27, 2007. *Id.*

[6]This page number refers to the Court's internal numbering in the upper right-hand corner of the document.

*Motion for Summary Judgment.* The ACA plays "a major role in designing and implementing professional standards for correctional practices, as well as methods for measuring compliance with those standards." *Id.; see also Hall Affidavit*, ¶ 2. These standards

> address services, programs, and operations essential to
> effective correctional management. Through accreditation,
> an agency is able to maintain a balance between protecting
> the public and providing an environment that safeguards the
> life, health, and safety of staff and offenders. Standards
> set by ACA reflect practical up-to-date policies and
> procedures and function as a management tool for over 1,200
> correctional agencies in the United States.

*ACA Report*, p. 14.

In September 2008, the ACA visited and inspected LeCI. *Hall Affidavit*, ¶ 4. The ACA examined issues affecting the conditions of confinement and quality of life within the facility, including security, living space, water supply, sanitation, fire safety, food service, medical care, recreation and visitation. *ACA Report*, pp. 8-12.[7] On February 7, 2009, the ACA advised that, because LeCI met ACA standards, it accredited LeCI effective January 2009. *Id.; Hall Affidavit*, ¶ 4. The accreditation is effective for three years. *Id.*

### D. The Instant Litigation

On January 8, 2009, plaintiffs filed this action, asserting eleven claims. *Complaint*, Doc. No. 6. Specifically, plaintiffs raise eight claims alleging that they were subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Plaintiffs also allege that defendants "knowingly" denied inmates reasonable access to the law library and legal

---

[7]Details of relevant conditions, including overcrowding and water quality, are addressed *infra* in the context of plaintiffs' specific claims.

materials in violation of their due process rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Plaintiffs further allege that LeCI's visitation policy is deliberately indifferent to inmates' desires to visit more often with family and friends. Plaintiffs allege that defendants violated anti-trust laws; they also assert a claim under RICO. Plaintiffs seek punitive damages in the amount of $500,000,000, compensatory damages in the amount of $25,000,000, costs and attorney fees. *Complaint*, pp. 35-36. Plaintiffs also seek a variety of equitable forms of relief including, *inter alia*, reducing the inmate population in all Ohio prisons, ordering Defendant Terry Collins to reconsider budget cuts, precluding Ohio prisons from double-celling inmates and closing LeCI's kitchen until a new one is constructed. *Id*. at 4, 9, 12, 16, 18, 22, 24, 26, 30, 32 and 34.

The defendants have moved to dismiss plaintiffs' claims. *See Motion to Dismiss of Governor Strickland*, Doc. No. 23 ("*Governor's Motion to Dismiss*"); *ODRC Defendants' Motion for Summary Judgment*. Only Plaintiff Davis responded to the *Governor's Motion to Dismiss*. *Plaintiff's Response to Defendant Strickland's Motion to Dismiss*, Doc. No. 25 ("*Response to Motion to Dismiss*") (signed by only Plaintiff Davis). In addition, only Plaintiffs Davis and Gall responded to *ODRC Defendants' Motion for Summary Judgment*. *Plaintiffs' Response to Defendants' Motion for Summary Judgment*, Doc. No. 32 ("*Response to Motion for Summary Judgment*"). Under these circumstances, the Court will regard the *Governor's Motion to Dismiss* as unopposed by Plaintiffs Reid and Gall. The Court will address the *ODRC Defendants' Motion for Summary Judgment* as to the claims of Plaintiffs Davis and

Gall; plaintiff Reid will be provided additional time to respond to this motion.

## II.  STANDARD

### A.   Motion to Dismiss

#### 1.   Fed. R. Civ. P. 12(b)(1)

The Governor moves for dismissal pursuant to, *inter alia*, Fed. R. Civ. P. 12(b)(1), challenging the Court's subject matter jurisdiction. Where such a motion is filed, the

> plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims.  *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir. 1976).  The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (citations omitted).  The court may consider such evidence without turning the motion into one for summary judgment. *Id*.

*Ferrero v. Henderson*, 244 F. Supp.2d 821, 826 (S.D. Ohio 2002).

#### 2.   Fed. R. Civ. P. 12(b)(6)

The Governor also moves to dismiss plaintiffs' *Complaint* for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint.  *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983); *Carter v. Welles-Bowen Realty, Inc.*, 493 F. Supp. 2d 921, 923 (S.D. Ohio 2007).  In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light

6

most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Federal Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. The Cmty. Mutual Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994).

Recently, the Supreme Court of the United States explained that "a court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. In addition, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). However, a plaintiff's ground for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

### B. Motion for Summary Judgment

The ODRC defendants have moved for summary judgment on plaintiffs' claims. The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

The judgment sought shall be rendered if the

> pleadings, discovery and disclosure materials on
> file, and any affidavits show that there is no
> genuine issue as to any material fact and that
> the movant is entitled to judgment as a matter of
> law.

Fed. R. Civ. P. 56(c).  Pursuant to Rule 56(c), summary judgment is

appropriate if "there is no genuine issue as to any material fact . .

. ." *Id.*  In making this determination, the evidence "must be viewed

in the light most favorable" to the non-moving party. *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157 (1970).  "Summary judgment will not lie

if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the

non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  However, summary judgment is appropriate if the opposing

party "fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  The "mere existence of a scintilla of

evidence in support of the [opposing party's] position will be

insufficient; there must be evidence on which the jury could

reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its

motion, and identifying those portions" of the record which

demonstrate "the absence of a genuine issue of material fact."

*Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the

nonmoving party who "must set forth specific facts showing that there

is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting

Fed. R. Civ. P. 56(e)).  "Once the moving party has proved that no

8

material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### C.    Pro Se Status

In this case, plaintiffs are proceeding without the assistance of counsel.  A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A court should make a reasonable attempt to read the pleadings of a pro se litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *Ashiegbu v. Purviance*, 74 F. Supp.2d 746, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  "This standard does not mean, however, that pro se plaintiffs are entitled to take every case to trial." *Id.* at 746 (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). "Indeed, courts should not assume the role of advocate for the pro se litigant." *Id.* (citing *Hall*, 935 F.2d at 1110).

### III. DISCUSSION

### A.    Class Certification

Plaintiffs allege that they are part of a class of "all inmates housed within the Ohio's Prisons[,]" which presently includes

approximately 45,000 individuals housed in more than 30 different prisons. Doc. Nos. 9, 35, 38. Plaintiffs contend that "[t]he questions of law and facts will predominate over questions affecting only individual members, [and therefore] class action is superior." Doc. No. 9, p. 2. *See also* Doc. No. 38, p. 2. Plaintiffs further argue that certifying this litigation as a class action will prevent piecemeal litigation, reducing the burden on both the Court and the litigants. *Id*. Defendants oppose plaintiffs' request for certification. Doc. No. 36.

"In order to obtain class certification, [a] plaintiff must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman v. GMAC*, 296 F.3d 443, 446 (6th Cir. 2002). The party seeking class certification bears the burden of proof in this regard. *See*, *e.g.*, *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005).

Here, plaintiffs, *pro se* prisoners, have failed to carry their burden. First, "'[t]o maintain a class action, the existence of the class must be pleaded and the limits of the class must be defined with some specificity.'" *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (quoting *Wilson v. Zarhadnick*, 534 F.2d 55, 57 (5th Cir. 1976)). Plaintiffs speculate that the number of inmates in Ohio totals "over 45,000" at "30 individual prisons" with an "unknown number of incarcerated inmates in the future." Plaintiffs' bare speculation is insufficient to satisfy the numerosity requirement. *See*, *e.g.*, *Golden*, 404 F.3d at 966.

Second, Fed. R. Civ. P. 23(a)(2) requires that "there are questions of law or fact common to the class[.]" Plaintiffs offer

nothing other than generalized conclusions that the claims of all of the members of this putative class share common questions of fact and law. Doc. No. 9, p. 2; Doc. No. 38, p. 2. "Conclusory allegations of commonality are insufficient to satisfy the burden of proof on certification." *Violette v. P. A. Days, Inc.*, 214 F.R.D. 207, 213 (S.D. Ohio 2003) (citing, *inter alia*, *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)).

Third, the claims of the class representatives must be typical of the claims of the class under Fed. R. Civ. P. 23(a)(3). Plaintiffs apparently believe that their claims are typical of the class because plaintiffs seek protection of "the rights of all inmates housed within the Ohio's Prisons against cruel and unusual punishments[.]" Doc. No. 35, p. 2. However, by plaintiffs' own admission, the putative class is housed in 30 different prisons with, presumably, varying conditions and facilities. Plaintiffs "cannot satisfy the typicality requirement of Rule 23 by comparing their claims to the hypothesized claims of unsubstantiated putative class members." *Edwards v. McCormick*, 196 F.R.D. 487, 495 (S.D. Ohio 2000).

Finally, *pro se* prisoners are not adequate representatives able to fairly represent a class. *See*, *e.g.*, *Palasty v. Hawk*, No. 00-5840, 15 Fed. Appx. 197, 200 (6th Cir. June 20, 2001) (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)); *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975)); *Holmes v. Michigan Dep't of Corrections*, 805 F.2d 1034 (Table), 1986 WL 18651, *7 (6th Cir. 1986). Therefore, plaintiffs, *pro se* prisoners, cannot adequately represent the purported class, a fact that Plaintiff Gall

apparently concedes.[8]

For all of these reasons, the Court concludes that plaintiffs lack standing to pursue claims of other inmates. Therefore the request for class certification, Doc. Nos. 9, 38, is without merit. Accordingly, plaintiffs' claims will be limited to alleged violations of their own constitutional rights.

### B. Exhaustion

The ODRC defendants allege that each of the named plaintiffs failed to exhaust their remedies as to some of the eleven asserted claims. *Motion for Summary Judgment*.

The Prison Litigation Reform Act of 1996 ["PLRA"] requires a prisoner to exhaust administrative remedies available to the prisoner prior to filing an action in a federal court. 42 U.S.C. § 1997e(a). The PLRA states in pertinent part as follows:

> No action shall be brought with respect to prison conditions under [section 1983 of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id*. The plaintiff-prisoner bears the burden of proving that a grievance has been fully exhausted. *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002), *overruled on other grounds* by *Jones v. Bock*, 549 U.S. 199, 213-17 (2007). Although exhaustion is not a jurisdictional predicate, it is nevertheless mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), even if proceeding through the administrative system would appear to the inmate to be "futile."

---

[8]In support of the request for class action certification, Plaintiff Gall admits that "all 3 Plaintiffs know full well that they are not attorneys nor are they able to act on behalf of any other inmate[]" and therefore requested that the Court appoint counsel. Doc. No. 38, p. 2. Plaintiffs' request for appointment of counsel was previously denied without prejudice to renewal at a later stage of the proceedings. *Opinion and Order*, Doc. No. 40.

*Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).

"[I]f a complaint contains claims that are exhausted and claims that are not exhausted, the district court should proceed with the exhausted claims while dismissing the claims that are not exhausted and should not dismiss the complaint in its entirety." *Grinter v. Knight*, 532 F.3d 567, 578 n.9 (6th Cir. 2008) (citing *Jones*, 549 U.S. 199, 218-23).

Attached to the *Motion for Summary Judgment* is the affidavit of ODRC's Assistant Chief Inspector, Donald Coble. Exhibit A ("*Coble Affidavit*" or "*Coble Aff.*"). Mr. Coble handles appeals from inmates and directs grievances to Chief Inspector of the ODRC. *Id.* at ¶ 2. He is also the custodian of the records for these appeals and grievances. *Id.* According to the affiant, ODRC maintains a three-step grievance procedure. *Id.* at ¶¶ 3-6. All inmates are given written and oral instructions on how to utilize this procedure, including instructions on appeals to the Office of Chief Inspector and direct grievances to that office. *Id.* at ¶ 7.

After reviewing the records relating to plaintiffs, Mr. Coble avers that each plaintiff failed to exhaust some of the claims set forth in the *Complaint*. *Id.* at ¶ 8. Specifically,

- **Plaintiff Davis** failed to exhaust his remedies with respect to:

  - Claim 3 (health and safety issues with kitchen and dining room)

  - Claim 5 (inadequate fire protection at LeCI)

  - Claim 6 (inadequate recreation yard and gymnasium)

  - Claim 8 (inadequate clothing and bedding at LeCI)

  - Claim 11(inmates are allowed to purchase clothing from only one supplier)

- **Plaintiff Gall** failed to exhaust his remedies with respect to:

13

- Claim 3 (health and safety issues with kitchen and dining room)

- Claim 4 (drinking and bathing water at LeCI is detrimental to inmate health)

- Claim 5 (inadequate fire protection at LeCI)

- Claim 6 (inadequate recreation yard and gymnasium)

- Claim 8 (inadequate clothing and bedding at LeCI)

- Claim 9 (inmates denied access to law library and legal materials at LeCI)

- Claim 10 (inadequate inmate visitation practices at LeCI)

- Claim 11(inmates are allowed to purchase clothing from only one supplier)

- **Plaintiff Reid** failed to exhaust his remedies with respect to:

  - Claim 2 (double-celling at LeCI is putting inmates' health and safety at risk)

  - Claim 3 (health and safety issues with kitchen and dining room)

  - Claim 7 (inadequate showers at LeCI)

  - Claim 9 (inmates denied access to law library and legal materials at LeCI)

  - Claim 10 (inadequate inmate visitation practices at LeCI)

  - Claim 11(inmates are allowed to purchase clothing from only one supplier)

*Id*.

In response, plaintiffs James Davis and Eugene Gall apparently concede that they failed to exhaust their remedies as to these claims. *Response to Motion for Summary Judgment*, p. 8. Based on the *Coble Affidavit*, Plaintiffs Davis and Gall contend that Plaintiff Davis has exhausted administrative remedies as to Counts 1, 2, 4, 7, 9 and 10 and that Plaintiff Gall has exhausted remedies as to Counts 1, 2 and 7. *Id*.

Accordingly, the Court concludes that the claims of Plaintiff

Davis with respect to Counts 3, 5, 6, 8 and 11 and the claims of Plaintiff Gall with respect to Counts 3, 4, 5, 6, 8, 9, 10 and 11 are not exhausted and therefore cannot proceed.  The exhausted claims of Plaintiffs Davis and Gall are addressed *infra*.[9]

### C.   Official Capacity Claims

Plaintiffs have sued defendants in their official and individual capacities for monetary damages.  *Complaint*; plaintiffs' *Motion to Supplement Complaint*, Doc. No. 12; *Order*, Doc. No. 13.  Unless a state waives its immunity, the Eleventh Amendment to the United States Constitution "prevents a federal court from entertaining a suit brought by a citizen against his own state.  States are immune from such suits unless a state waives its immunity." *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992) (internal citations omitted).  Despite plaintiffs' arguments to the contrary, the State of Ohio has not waived its sovereign immunity in federal court. *See*, *e.g.*, *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the state itself." *Wolfel*, 972 F.2d at 719.  Therefore, "a suit for damages against a state official in his or her official capacity cannot be maintained pursuant to § 1983." *Id.* at 718.

---

[9]As discussed *supra*, Plaintiffs Davis and Reid are no longer incarcerated at LeCI.  Therefore, the Court concludes that their request for injunctive relief is now moot. *See*, *e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir. 2001); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).  However, Plaintiffs Davis and Reid may proceed with their request for monetary relief in connection with their exhausted claims.

On a related note, contrary to the unsubstantiated allegations of plaintiffs, there is no evidence before the Court that Plaintiffs Davis and Reid were transferred from LeCI because of this litigation. *See Second Eleby Affidavit.*

As discussed *supra*, the instant plaintiffs have sued the Governor and the ODRC defendants for monetary damages. This Court lacks jurisdiction over plaintiffs' official capacity claims for monetary damages. *See also Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004); *Allen v. Ohio Dep't of Rehab. & Corr.*, 128 F. Supp. 2d 483, 490 (S.D. Ohio 2001).

**D.    Claims against the Governor in His Individual Capacity**

Plaintiffs assert claims against the Governor pursuant to 42 U.S.C. § 1983.[10] To state a colorable claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal constitution or laws by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). To succeed on a claim for a violation of § 1983, a plaintiff must show that (1) a person (2) acting under color of state law (3) deprived him or her of his or her rights secured by the United States Constitution or its laws. *See Waters v. City of Morristown,* 242 F.3d 353, 358-59 (6th Cir. 2001). Because § 1983 is a method for vindicating federal rights, and is not itself a source of substantive rights, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

---

[10]Section 1983 provides in relevant part:

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

The Governor has moved to dismiss plaintiffs' personal capacity claims against him for failure to state a claim, arguing that the *Complaint* is devoid of any allegation that the Governor was personally involved in or encouraged the alleged violations. *Governor's Motion to Dismiss*. "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (internal quotation marks omitted)). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id*. (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (internal quotation marks omitted)).

In response, Plaintiff Davis argues that the *Governor's Motion to Dismiss* should be denied as "premature" because he did not file an answer to the *Complaint* and should be denied because the Governor was directly involved in the alleged violations. Specifically, Plaintiff Davis contends that

> Defendant Strickland, like other Governors are more than just figureheads– he actively participated and ordered the deprivations complained of in this Complaint. The FACTUAL allegations in the Complaint speak for themselves and this Court will note that at no time does Defendant Strickland deny the allegations– only that he is "immune" or not directly involved.
>
> The real situation of course is that Defendant Strickland is indeed not only directly involved but has made several announcements in the newspapers and the airwaves (television and radio) as everyone who lives in or around Columbus knows. These pronouncements not only demonstrate Defendant Strickland's [sic] knows about the situations in Ohio's prisons, it also shows that he is not denying the facts in the Complaint.

*Response to Motion to Dismiss*, p. 2.

These arguments are unpersuasive. First, the Federal Rules of Civil Procedure permit a party to file, in lieu of an answer, a motion asserting defenses of lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b). Therefore, Plaintiff Davis's procedural argument that the *Governor's Motion to Dismiss* is premature is without merit.

Second, Plaintiff Davis's suggestion that the factual allegations in the *Complaint* are sufficient is wrong. Plaintiffs have not alleged that the Governor had any direct or indirect involvement in the alleged unconstitutional conduct. As Plaintiff Davis acknowledges, in order to hold the Governor indirectly liable for the alleged violations, plaintiffs must show that the Governor encouraged or participated in the unlawful activity. *Response to Motion to Dismiss*, p. 2 (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiffs' failure to make such a showing is fatal to their claims.

Finally, allegations regarding the Governor's purported media announcements were not contained in the *Complaint* and were raised for the first time in response to the *Governor's Motion to Dismiss*. However, even if the Court considered these allegations, they are wholly insufficient to defeat a motion to dismiss because they are conclusory and unsubstantiated. *See*, *e.g.*, *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); *Glisson v. Tuttle*, 820 F.2d 1224 (6th Cir. 1987) (concluding that broad, conclusory statements were insufficient to overcome a Fed. R. Civ. P. 12(b)(6) motion to

18

dismiss); *Johnson v. Fresh Mark, Inc.*, 337 F. Supp. 2d 996, 1001 (N.D. Ohio 2003) (same).[11]  Accordingly, plaintiffs' claims against the Governor in his individual capacity are without merit.

> **E.  Claims Against the ODRC Defendants in Their Individual Capacity**
>
> **1.  Counts 1, 2, 4 and 7** (8th Amendment claims)

Plaintiffs allege that the ODRC defendants subjected inmates to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  *Complaint*, pp. 1-9, 13-16, 22-24.  The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962), prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.  U.S. Const. amend. VIII.

"An Eighth Amendment conditions-of-confinement claim has two elements."  *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006).  "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.  Second, the prison official's state of mind [must be] one of 'deliberate indifference' to inmate health or safety."  *Id.* (internal quotation marks and citations omitted).  "The [United States] Supreme Court has cautioned against the expansive application of the Eighth Amendment in the prison context."  *Caldwell v. Woodford Cty. Chief Jailer*, 968 F.2d 595, 601 (6th Cir. 1992).

---

[11]In addition, as the Governor points out, Plaintiff Davis cites to no authority for the proposition that a public announcement about prison closings establishes the type of involvement necessary to hold a state public official, a governor, liable in a Section 1983 action.

**a. Counts 1 and 2** (overcrowding/double-celling)[12]

Plaintiffs allege the ODRC defendants "force the inmates to live in conditions that are detrimental to their health and safety" by "knowingly allow[ing] <u>ALL</u> Ohio prison inmate populations to increase between 150% and in many cases over 200% beyond their designated rated capacities[.]" *Complaint*, pp. 1, 6 (emphasis in original). Plaintiffs allege that the "non-actions" of ODRC, specifically defendants Terry Collins, Jason Hall and Tim Brunsman, establish that defendants are deliberately indifferent to inmates' health and safety and to ACA standards regarding an inmate's required living space. *Id*. at 4-8 (citing Exhibit A, attached thereto). Plaintiffs also allege that ODRC budget cuts negatively impact inmates' health. *Id*. at 2-4 (citing Exhibit B, attached thereto). Plaintiffs further allege that, although double-celling is not in itself unconstitutional, the courts "in many cases" permitted it because the inmates had unrestricted access to "day rooms," which is not the case at LeCI. *Id*. at 7. The ODRC defendants argue that these claims should be dismissed because plaintiffs have failed to establish that there is a "sufficiently high risk" of future harm and that any inconvenience resulting from double-celling does not amount to an Eighth Amendment violation. *ODRC Defendants' Motion for Summary Judgment*, pp. 11-12.

This Court agrees. First, to the extent that plaintiffs complain about purported violations of other, unidentified, inmates' rights, the Court has already concluded that plaintiffs are inappropriate class representatives. Accordingly, plaintiffs lack standing to assert the rights of other inmates. *See*, *e.g.*, *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) ("[A] prisoner who initiates a civil

---

[12]Plaintiffs Davis and Gall exhausted these claims.

action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and, absent a request for class certification, lacks standing to assert the constitutional rights of other prisoners.").

Second, plaintiffs fail to allege that each one of the ODRC defendants was directly involved in or encouraged the purported unconstitutional acts. Specifically, Counts 1 and 2 do not even refer to defendants Robert Welch, James Kelly, Clyde Gentry, James Dunn, Greg Craft or Don Coble. *Complaint*, pp. 1-9. As discussed *supra*, failure to make such allegations is fatal to the claims against these defendants.

Third, to the extent that plaintiffs refer to the denial or disregard of their letters, complaints and/or grievances by defendants Terry Collins, Tim Brunsman, Jason Hall and April Barr, this reliance is insufficient to save plaintiffs' claims. Simply participating in the grievance procedure is insufficient to establish liability under Section 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Fourth, contrary to plaintiffs' assertions and as discussed *supra*, LeCI earned ACA accreditation effective January 2009. In its report accrediting LeCI, the ACA specifically found that

> [a]ll lighting and temperatures [at LeCI] were well within
> comfortable range. The Institution was clean and orderly.
> Some of the cell[s] seemed cluttered however they we[re]
> initially designed for one bed instead of two. There were
> some complaints from the inmate population that the roaches
> were a problem; especially at night. Staff are regularly
> spraying and dealing with this problem. . . . The
> Institution is extremely crowded due to budget and closing
> two other Ohio Facilities. Despite the crowding most
> inmates feel safe and the Institution appears to be running
> well. . . . The Institution is clean and well maintained.
> Regular inspections of housing units by safety and
> sanitation personnel were documented. Sanitation is a high
> priority with the Warden and his Executive Staff.

*ACA Report*, p. 9. As this report suggests, despite its awareness of overcrowding at LeCI, the ACA nevertheless concluded that LeCI is clean and sanitary. *Id*. Plaintiffs' speculation and unsubstantiated allegations that overcrowding at LeCI presents dangers to inmate health are insufficient to defeat summary judgment. *See*, *e.g.*, *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.").

Finally, although they allege that a failure to screen inmates[13] and overcrowding pose risks to inmates, plaintiffs do not explain how these alleged conditions actually caused or is likely to cause harm to plaintiffs. *See* Exhibits A, B and C attached to *Complaint*; *Response to Motion for Summary Judgment*. Plaintiffs' failure to identify specific instances of constitutional violations is fatal to their claims. *Haliburton v. Sunquist*, No. 02-6016, 59 Fed. Appx. 781 (6th Cir. 2003) (affirming dismissal of inmate claims where inmate "did not allege that any of the potential dangers he identified actually caused him any harm"). In addition, as plaintiffs concede in the *Complaint*, p. 7, "double-celling, by itself, does not violate the Eighth Amendment." *Id*. (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981)). Although plaintiffs, who reside in privileged housing that formerly offered single-capacity cells, might desire additional living space, "[t]o the extent that such conditions [at LeCI] are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Accordingly, plaintiffs' claims based on overcrowding and double-

_____

[13]Plaintiffs' allegation that "no screening takes place before double celling inmates," *Response to Motion for Summary Judgment*, p. 8, is not supported by any affidavit or other evidence.

celling (Counts 1 and 2) are without merit.

       **b.**    **Count 4** (unsafe drinking and bathing water)[14]

Plaintiff Davis alleges that LeCI's water supply is contaminated, exceeding acceptable levels of arsenic. *Complaint*, pp. 13-15. He further alleges that the contaminated water has caused "many of inmates" to develop skin problems, large boils and cancer. *Id.* at 13.

The ODRC defendants seek dismissal of this claim. *Motion for Summary Judgment*, p. 13 (citing *Brunsman Affidavit*). According to Defendant Brunsman, LeCI's warden, LeCI's water comes from wells and a large surge of water in the ground may cause discoloration. *Brunsman Affidavit*, ¶ 8. Defendant Brunsman avers that the water is routinely tested and is safe to drink. *Id.* In early 2009, the water supply in LeCI was interrupted because severe cold weather caused a break in the water line. *Id.* at ¶ 9. During that time, staff and inmates were directed not to drink the institution's water and the prison brought in water for the staff and inmates. *Id.* After water tests were conducted and the results returned, inmates and staff were advised that the water was safe to drink. *Id.*

In opposing the *Motion for Summary Judgment*, Plaintiff Davis focuses on a purported deprivation of water during the water main break at LeCI in January 2009. *Response to Motion for Summary Judgment*, pp. 3-4. Plaintiff Davis attaches five identical affidavits from different inmates describing the conditions during LeCI's water main break from January 14, 2009 through January 17, 2009. *Affidavit of Scott A. Throckmorton* ("*Throckmorton Affidavit*"), *Affidavit of Howard Webb*, *Affidavit of "Fisher,"* and *Affidavit of Larry Stewart*, attached to *Response to Motion for Summary Judgment* (collectively,

---

[14]Plaintiff Davis exhausted this claim, but Plaintiff Gall did not.

23

"the affidavits"). These inmates aver that, over a 36-hour period during the water break, inmates were provided only one 4-ounce cup of water at each meal. *Throckmorton Affidavit*, ¶ 2.[15] Conversely, the inmates could see employees drinking from bottled water "in a manner meant to harass the inmates." *Id.* at ¶ 5. During this same time, the inmates were also not permitted to flush their toilets. *Id.* at ¶ 4.

Plaintiff Davis's complaints regarding the water at LeCI are without merit. First, Plaintiff Davis apparently abandons his claim based on allegations, contained in the *Complaint,* that the water at LeCI is unsafe and contains arsenic, focusing instead on an alleged water deprivation in January 2009. Because he offers no argument or evidence to support the initial allegations that LeCI provides unsafe water to its inmates, claims based on these allegations are without merit.

Second, to the extent that Plaintiff Davis attempts to do so, he does not have standing to assert the rights of other inmates. *See*, *e.g.*, *Newsom v. Norris*, 888 F.2d at 381.

Third, Plaintiff Davis fails to allege that each ODRC defendant was directly involved in or encouraged the purported unconstitutional acts. Specifically, neither Count 4 nor the proffered affidavits refer to any wrongdoing of any defendant other than defendant James Dunn, LeCI's water plant manager. *Complaint*, pp. 1-9; attachments to *Response to Motion for Summary Judgment*. As discussed *supra*, failure to make such allegations is fatal to the claims against these defendants.

Fourth, Plaintiff Davis alleges that Defendant Dunn, in

---

[15]Because all of the affidavits are identical, the Court will refer to only one affidavit for ease of reference.

responding to a grievance or informal complaint, "clearly ignored" certain questions regarding the water color. *Complaint*, pp. 14-15. Other than these allegations contained in the *Complaint*, and Exhibit F (the grievance and related documentation) attached thereto, Plaintiff Davis offers no argument or evidence to support his claims against Defendant Dunn. As discussed *supra*, simply participating in the grievance procedure is insufficient to establish liability under Section 1983. *Shehee*, 199 F.3d at 300.

Finally, even if the proffered affidavits attached to the *Response to Motion for Summary Judgment* and describing the water main break in January 2009 identified wrongdoing on the part of specific defendants, Plaintiff Davis cites to no authority establishing Eighth Amendment liability under these circumstances. The affidavits describe a single period of short duration during which they received limited rations of water, were unable to flush cell toilets and LeCI officers drinking bottled water in front of inmates. There is absolutely no allegation that Plaintiff Davis personally experienced these inconveniences during the 36-hour period while living in privileged housing or, if he did, that he suffered any long-term adverse effects from these conditions. Moreover, the parties agree that the conditions complained of resulted from a water main break; there is no evidence that the ODRC defendants purposely created a water shortage to punish inmates or acted with deliberate indifference to the needs of inmates during this episode. Such short-term inconveniences, although uncomfortable, do not rise to the level of Eighth Amendment violations. *Cf.*, *Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir. 1987) (finding no Eighth Amendment violation where plaintiff was confined in sanitary holding cell for approximately 20

hours without food, water, sheets, a blanket, a shower and a bunk-bed); *J.P. v. Taft*, 439 F. Supp.2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal citation omitted)). Accordingly, Plaintiff Davis's claims based on the water at LeCI (Count Four) are without merit.[16]

      **c.**  **Count 7** (inadequate shower facilities)[17]

Plaintiffs complain that LeCI's showers "may or may not work, depending on which range the showers are located, they also may not have adequate water pressure for showering." *Complaint*, p. 23. Plaintiffs further complain about the purported delay in repairing showers. *Id.* at 23-24. Other than these unsupported allegations in the *Complaint*, plaintiffs offer nothing to support their claim based on inadequate shower facilities. *See Response to Motion for Summary Judgment*. In opposing summary judgment, plaintiffs must come forward with specific facts showing that there is a genuine issue for trial. *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Failing to do so, plaintiffs' claims cannot survive summary judgment.

In addition, plaintiffs have not alleged, let alone established,

---

[16]References in the affidavits to officers drinking bottled water in front of inmates during the water main break are similarly insufficient to establish Plaintiff Davis's claim. First, there is no allegation or evidence that Plaintiff Davis witnessed this behavior. Second, even if he had observed this behavior, such actions, while annoying, do not rise to the level of an Eighth Amendment violation. *See*, *e.g.*, *Hinton v. Doney*, No. 93-2050, 1994 U.S. App. LEXIS 1423, at *5 (6th Cir. Jan. 26, 1994) ("Similarly, the accusations that Doney has 'taunted' Hinton, either verbally or by use of a cigarette lighter, are insufficient to support a claim under the Eighth Amendment."); *Hartsfield v. Mayer*, No. 95-1411, 1996 U.S. App. LEXIS 3496, at *4-5 (6th Cir. Feb. 1, 1996) ("Allegations of verbal abuse and harassment by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.") (citing *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (*per curiam*)).

[17]Plaintiffs Davis and Gall exhausted this claim.

26

that they were personally denied showers over an excessive period of time or were otherwise deprived of personal health necessities. However unpleasant, periodic inconveniences arising from prison shower facilities do not establish an Eighth Amendment violation. *See*, *e.g.*, *Miller v. Palmer*, No. 99-2352, 2000 U.S. App. LEXIS 24863, at *4-5 (6th Cir. Sept. 27, 2000) (concluding that denial of a shower, *inter alia*, fails to establish that inmate was subjected to a deprivation of "the minimal civilized measure of life's necessities"); *Schrader v. Collins*, No. 97-4471, 1998 U.S. App. LEXIS 30108, at *5-6 (6th Nov. 23, 1998) (granting summary judgment to defendants against inmate plaintiffs where, *inter alia*, "limited shower opportunities do not deprive inmates of warmth or cleanliness"); *Metcalf v. Veita*, No. 97-1691, 1998 U.S. App. LEXIS 18266, at *5 (6th Cir. Aug. 3, 1998) (concluding that an inmate's "complaints regarding insufficient showers, trash removal, cleaning, and laundry do not rise to this level [of conditions that offend contemporary standards of decency]"). Accordingly, claims based on inadequate shower facilities are without merit.

### 2. **Count 9** (access to the courts)[18]

Plaintiff Davis alleges that the ODRC defendants have denied him access to the courts in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. *Complaint*, pp. 27-30. More specifically, he alleges that his rights were violated because LeCI replaced hard copies of legal materials with computers; the law library contains only four working computers; an inmate must first obtain a "pass" in order to access the library; library hours are insufficient; and ODRC defendants refuse to make

---

[18]Plaintiff Davis exhausted this claim.

copies of an inmate's legal documents.  *Id.*

Although prisoners enjoy a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), that right is not without limit, *Lewis v. Casey*, 518 U.S. 343, 349 (1996). The Sixth Circuit has explained that this constitutional right "is not a generalized right to litigate but a carefully-bounded right":

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing Lewis, 518 U.S. at 355).  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Id.*

Moreover, a plaintiff-prisoner claiming the denial of his right of access to courts must establish more than mere negligence on the part of prison officials.  *Lewis*, 518 U.S. at 349; *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) ("[W]hen access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs.").  Furthermore, in order to prevail on a claim of denial of the right of access to the courts, a prisoner must show actual prejudice to a nonfrivolous claim. *Hadix v. Johnson*, 173 F.3d 958, 964 (6th Cir. 1999); *Jackson v. Gill*, No. 03-5045, 92 Fed. Appx. 171, 173 (6th Cir. Feb. 3, 2004) (citing *Lewis*, 518 U.S. at 351). "Actual prejudice" may include the dismissal of a case, an inability to file a complaint or the failure to meet a court-imposed deadline.  *Jackson*, 92 Fed. Appx. at 173. *See also*

*Winburn v. Howe*, No. 00-2243, 43 Fed. Appx. 731, 733 (6th Cir. Mar. 21, 2002) ("An 'actual injury' does not occur 'without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented.'") (quoting *Root v. Towers*, 238 F.3d 423 (6th Cir. 2000)).

Plaintiff Davis offers nothing more than unsubstantiated allegations in the *Complaint* to support his claim. *See Response to Motion for Summary Judgment*. The record is completely devoid of any allegation or evidence that Plaintiff Davis suffered an actual injury to a nonfrivolous claim. Under these circumstances, Plaintiff Davis's claim of denial of his right of access to the courts must fail.

### 3. **Count 10** (unfair visitation policy)[19]

Plaintiff Davis acknowledges that "inmate visitation is not an established constitutional right," but alleges that inmates at LeCI are not provided as many visitation opportunities as they would like. *Complaint*, pp. 30-32. Other than these allegations, Plaintiff Davis offers no evidence to support his claim. *See Response to Motion for Summary Judgment*.

Prison visitation is not a liberty interest derived from the Fourteenth Amendment that enjoys constitutional protection. *See, e.g.*, *Bazzetta v. McGinnis*, 430 F.3d 795, 804-05 (6th Cir. 2005) (declining to hold that a prison visitation regulation implicates due process guarantees and stating that "[w]e know of no circuit court that has found an implicit due process right to prison visitation"); *Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) ("It is clear that a prisoner does not have a due process right to *unfettered*

_____

[19]Plaintiff Davis exhausted this claim.

visitation.") (emphasis in original); *Conway v. Wilkinson*, No. 2:05cv820, 2007 U.S. Dist. LEXIS 21177, at *10 (S.D. Ohio Mar. 26, 2007) ("[P]rison visitation is not a liberty interest which can be derived from the Fourteenth Amendment and which enjoys constitutional protection[.]"). Accordingly, Plaintiff Davis's complaint that inmates do not receive as many visitation hours as they would like does not rise to the level of a constitutional violation.

Accordingly, it is **RECOMMENDED** that plaintiffs' *Motion to Certify This Action as Class Action*, Doc. No. 9, and plaintiff Eugene Gall's *Motion to Determine Class Action Status*, Doc. No. 35, be **DENIED**. It is further **RECOMMENDED** that the *Motion to Dismiss of Defendant Governor Strickland*, Doc. No. 23, be **GRANTED in its entirety** and the ODRC *Defendants' First Motion for Summary Judgment*, Doc. No. 28, be **GRANTED** as to the claims of Plaintiffs James Davis and Eugene Gall.

In addition, plaintiff Tyrone Reid is **ORDERED** to file, within 20 days, a written statement of his intent to proceed with the litigation. Plaintiff Reid is specifically **ADVISED** that his failure to respond will result in dismissal of his claims for lack of prosecution.


If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is

made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636 (b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


July 6, 2009                        *s/Norah McCann King*
                                    Norah M<sup>c</sup>Cann King
                            United States Magistrate Judge